Gertrude Peters, appellant, v. Royal L. Peters, appellee.

No. 49262.

(Reported in 86 N.W.2d 206)

NOVEMBER 12, 1957.

Wright & Kistle, of Council Bluffs, for appellant.

Smith, Peterson, Beckman & Willson, of Council Bluffs, for appellee.

OLIVER, J.—This is an appeal by Gertrude Peters from the judgment of Pottawattamie District Court dismissing her suit against her husband, Royal L. Peters, to require him to contribute to her support. The parties, now in their early fifties, were married in 1924, and have one son. Mr. Peters is and has been employed near Crescent, in Pottawattamie County, by Illinois Central Railroad Company, which provides him with a house near by. The parties and their son occupied this house from 1945 until the spring of 1952, when floodwaters submerged it. They then moved temporarily to the home of Mr. Peters' mother in Council Bluffs. Their relations had not been harmonious for some time. They returned to Crescent together about the middle of June 1952. Mrs. Peters stopped at the farm of her parents and Mr. Peters went to the family home. The immediate cause of their separation is not clearly shown. Apparently it was voluntary on the part of both. Mrs. Peters went to Council Bluffs, rented quarters there for herself and the son, then eighteen years old, and secured employment in a retail store. Mr. Peters continued to live alone in the family home, the renovation of which was not completed by the railroad company for several months.

112

About July 1, 1952, Mr. Peters instituted a suit for divorce upon the ground of inhuman treatment. Mrs. Peters counterclaimed for separate maintenance upon the same ground. Trial resulted in judgment, in June 1953, dismissing both the petition and counterclaim. The parties continued to live apart and Mr. Peters later brought another suit for divorce, this time on the ground of desertion. Trial of that case resulted in judgment dismissing his petition November 3, 1955. The instant suit for support was instituted by Mrs. Peters in March 1956.

Mrs. Peters worked in Council Bluffs until late in 1955, when she contracted a heart ailment. Thereafter, she was under the care of a doctor and, at times, hospitalized. She testified she had substantial unpaid bills for medical and hospital care, and other debts. She was buying a home in Crescent, on contract, which the son, then married, was renting from her. The rent amounted to little more than the payments required by the contract, not including insurance, taxes, etc. She owned a 1946 automobile. After she became ill she had lived with her parents near Crescent, in her own home in Crescent and with her sister in Council Bluffs, and had received some aid from the county.

Following their separation in 1952 the parties went their separate ways for several years. During this period the two suits between them were tried. Mrs. Peters testified they made no effort to contact each other. However, shortly after Mrs. Peters was first hospitalized, in 1955, Mr. Peters sent her flowers. The record does not show any response by her. Apparently a divorce proposition was subsequently made by her to Mr. Peters through their attorneys. March 3, 1956, Mr. Peters' attorney wrote her attorney a letter, signed by Mr. Peters, also, stating Mr. Peters had rejected this proposition as being beyond his financial means. It stated also, the family house had been cleaned and repaired and, "Mr. Peters is hereby requesting a reconciliation and requesting that Mrs. Peters return to him and to their home and resume their domestic marriage relation." To this letter Mrs. Peters made no answer. Her attorney wrote he did not represent her for the purpose of negotiating a reconciliation, "I think it would be advisable and certainly much more effective if Mr. Peters were to manifest his affection to Mrs. Peters

in person." Mr. Peters testified on cross-examination: "Well, I figured this here one letter would be enough asking her to come back." He had already testified he requested a reconciliation and "requested that she return to me and to my home and resume domestic relations. I am still willing to have her return back to the home. * * * If she came back out to the home I would be willing to treat her as a wife should be treated. I have never given any indication to anyone otherwise that I would not."

Mrs. Peters testified, "I thought you [Mr. Peters' attorney] had put him up to the letter; * * * I made no inquiries as to whether he was sincere * * * I knew it wasn't sincere; it was just his attorney. * * * Whether I would have gone back out to his home if he had asked me personally all depends; a few provisions would have to be made if I went back."

The trial court found the proposals and offers of Mr. Peters were made in good faith and that Mrs. Peters took no action upon them.

I. Appellant's brief states: "This is an action in equity under Chapter 252A, Code of Iowa, 1954, and amendments thereto entitled 'Uniform Support of Dependents Law' to compel the appellee to support the appellant who lives apart from appellee." Actually it is a suit by a wife against her husband for separate maintenance, brought under the Uniform Support of Dependents Law. Appellee concedes such a suit may be instituted under the provisions of that chapter, if a petitioner so elects. However, he contends his legal liability for separate maintenance and support of his wife, in Iowa, is governed by rules of law already in effect.

The text in 41 C. J. S., Husband and Wife, section 15b, states: "Statutes providing that the husband must support himself and wife * * *. are merely declaratory of the common-law duty of the husband, and the common-law liability of a husband to support his wife cannot be extended by implication from statutes relating to the support of other persons."

Davis v. Davis, 246 Iowa 262, 67 N.W.2d 566, construed some provisions of chapter 252A, Code of Iowa, 1954, Uniform Support of Dependents Law. After that case was decided certain amendments to this law were adopted. For a discussion

of decisions involving various phases of the law and of the Uniform Reciprocal Enforcement of Support Act adopted by many other states see annotation in 42 A. L. R.2d 768.

Code section 252A.1 states the purpose of that chapter is to secure support for dependent wives, and certain others, from persons legally responsible for their support. Section 252A.2(4) defines a "dependent" wife as one "in need of and entitled to support from a person who is declared to be legally liable for such support by the laws of the state * * *." Section 252A.3(1) states a husband "is hereby declared to be liable for the support of his wife" and, if able, may be required to pay. Section 252A.3 (8) enacted in 1955, and taken from section 7 of the Uniform Reciprocal Enforcement of Support Act, as amended, provides, "Duties of support applicable under this chapter are those imposed or imposable under the laws of any state where the respondent was present during the period for which support is sought. * * *."

That a husband is bound to support his wife is well settled. 41 C. J. S., Husband and Wife, section 15a; Graves v. Graves, 36 Iowa 310, 312, 313, 14 Am. Rep. 525; In re Guardianship of Bagnall, 238 Iowa 905, 938, 939, 29 N.W.2d 597, 614, and citations. However, ordinarily, he is bound to make suitable provision for her at his own home only, and if she willfully abandons him without just cause she may not require him to maintain her separately elsewhere. Descelles v. Kadmus, 8 (Clarke) Iowa 51; 41 C. J. S., Husband and Wife, section 15c.

In Iowa separate maintenance has not been a statutory remedy, and authority to grant that relief has been based upon the inherent power of courts of equity. Avery v. Avery, 236 Iowa 9, 17 N.W.2d 820, and citations. The grounds therefor are generally the same as the statutory grounds for divorce. Harlow v. Harlow, 150 Iowa 173, 174, 129 N.W. 833; Avery v. Avery, 236 Iowa 9, 11, 12, 17 N.W.2d 820; Bartlett v. Bartlett, 214 Iowa 616, 243 N.W. 588; Shors v. Shors, 133 Iowa 22, 110 N.W. 16; Sweat v. Sweat, 238 Iowa 999, 1008, 29 N.W.2d 180; Garberson v. Garberson, N. D. Iowa, 82 F. Supp. 706, 709 (opinion by Judge Graven); Separate Maintenance in Iowa, 24 Iowa Law Review 137; Annotation in 10 A. L. R.2d 466, 504. However, this court has held separate maintenance on the ground of

desertion may be awarded prior to the expiration of the two-year period required by Code section 598.8, for divorce on such ground. Brown v. Brown, 232 Iowa 1265, 1268, 8 N.W.2d 414, 416, and citations.

■ This suit, although brought under procedure provided by chapter 252A of the Code, is in fact merely a suit by a wife for separate maintenance. Hence, the rules of substantive law governing her right to separate maintenance are here applicable.

■ II. The judgment in the first suit between the parties denying the cross-petition of Mrs. Peters for separate maintenance constituted a judicial determination that she was not then entitled to separate maintenance. Appellee pleaded the judgment was res judicata herein.

The general doctrine of res judicata is too well settled to justify extended discussion here. Its basis is that a matter once decided is finally decided and may not be again litigated. The doctrine is, of course, applicable to suits involving divorce and separation. See 17 Am. Jur., Divorce and Separation, sections 543–545; 27 C. J. S., Divorce, section 174; Chapman v. Chapman, 181 Iowa 801, 802, 805, 165 N.W. 96; Annotation in 10 A. L. R. 2d 546, 547.

■ Appellee's brief states Mrs. Peters is again claiming separate maintenance on the facts which existed when the former judgment, which denied it, was rendered. It points out that the parties have been continuously separated since prior to the commencement of that suit and that no claim is or could be made of any new facts subsequent to the first judgment, which would entitle her to separate maintenance. The trial court held appellee had established his defense of res judicata. We agree with this conclusion and affirm the judgment.

■ III. The final proposition presented by appellant is: "The record and evidence shown therein warrant the allowance of attorney fees for appellant's attorney as a necessary part of appellant's support." Counsel for appellant cite Finn v. Finn, 62 Iowa 482, 17 N.W. 739, holding that upon well-settled principles of equity and upon considerations of public policy a court may require a husband to furnish his wife the means of prosecuting or defending an action for separate maintenance. Also cited

is Maddy v. Prevulsky, 178 Iowa 1091, 160 N.W. 762, L. R. A. 1917C 335, holding a husband liable for services of an attorney rendered a wife in a divorce suit, upon the doctrine they were necessaries furnished her.

Appellant brought this suit under chapter 252A of the Code and secured District Court orders that she need pay no advance court costs, and that her costs in District Court and upon appeal, including her attorney's traveling expenses, should be paid by the county. The record does not show her reason for adopting the procedure prescribed by this chapter, but having done so she may not discard it in part.

Subsection 1 of Code section 252A.6 provides a proceeding under this chapter shall be commenced by a petitioner or by a petitioner's representative. Subsection 7 of section 252A.2 states petitioner's representative shall mean a county attorney or other public officer charged by law with the duty of handling such proceedings. It is clear the chapter contemplates such proceedings shall be conducted by public officers without expense to petitioners for attorney fees. Davis v. Davis, 246 Iowa 262, 274, 275, 67 N.W.2d 566, 573, cited by appellant, holds merely that a petitioner has "the right to engage his own attorney if he so desires."

Hence, in this case attorney fees were not a necessary part of appellant's support or necessary to enable her to prosecute the suit. Therefore appellant's application for the allowance thereof is denied.—Affirmed.

All JUSTICES concur except PETERSON, J., who takes no part.