**IN THE COURT OF APPEALS OF IOWA**

No. 19-1786
Filed July 1, 2020

**IN RE THE MARRIAGE OF MATTHEW J. EDWARDS
AND RACHAEL E. EDWARDS**

**Upon the Petition of
MATTHEW J. EDWARDS,**
        Petitioner-Appellant,

**And Concerning
RACHAEL E. EDWARDS,**
        Respondent-Appellee.

_____

        Appeal from the Iowa District Court for Linn County, Fae E. Hoover, Judge.


        Matthew Edwards appeals provisions of the temporary custody and support

order issued by the district court. **AFFIRMED.**


        Kevin C. Ridgon and Mark D. Fisher of Howes Law Firm, P.C., Cedar

Rapids, for appellant.

        Jacob R. Koller of Simmons Perrine Moyer Bergmann PLC, Cedar Rapids,

for appellee.


        Considered by Bower, C.J., and Doyle and Schumacher, JJ.

**DOYLE, Judge.**

Matthew Edwards appeals provisions of the temporary child custody and support order issued by the district court. Rachael Edwards requests appellate attorney fees. Upon our de novo review, we affirm the court's order on temporary spousal support. We find no error in the court's failure to allocate to Matthew any tax dependency exemptions. We decline Rachael's appellate attorney fee request.

### I. Background Facts and Proceedings.

In May 2019, Matthew petitioned for dissolution of his 2009 marriage to Rachael. The parties have two minor children. The parties' youngest child was born in 2016 and has special needs that requires daily management. The district court found Matthew's gross annual earnings to be $94,000. Rachael was a homemaker and the children's primary caregiver.

Rachael applied for a temporary order "to determine issues of legal custody, physical care, parenting time, child support, child medical support, spousal support, and attorney fees on a temporary basis." Rachael informed the court she wished to relocate with the children to her home area in Wisconsin, and she asked the court to hear the matter before the start of the 2019-2020 school year to prevent the children from having to change schools during the school year. Rachael explained she wanted to move to Wisconsin to seek employment and/or further her education and that she had significant family support there. In her request for temporary relief, Rachael requested joint legal custody of the children, physical care of the children subject to Matthew's rights of reasonable parenting time, child support of $1164 per month, and spousal support of $1500 per month. In his request for temporary relief, Matthew requested joint legal custody of the children,

shared physical care of the children or in the alternative, physical care of the children subject to Rachael's rights of visitation, payment of child support to Rachael if shared care was awarded, payment to Racheal of $1000 per month in spousal support, and that he be allowed to claim both children as income tax dependents on his tax returns and claim any credit or exemption attributable to the children.

A hearing took place in August 2019. The matter was submitted on affidavits, exhibits, financial affidavits, child support worksheets, and argument by counsel. The district court entered a temporary order providing joint legal custody of the children with Rachael having physical care and Matthew visitation. Matthew was ordered to pay Rachael $1000 a month in temporary spousal support and $1100 a month in temporary child support. The court did not address the temporary allocation of tax dependency exemptions issue.

Matthew then filed an Iowa Rule of Civil Procedure 1.904(2) motion asking the court to amend, modify, or enlarge its temporary order in various respects. Among other things, Matthew asked the court to reconsider its temporary physical care placement with Rachael and asked that children be placed in his physical care. Matthew noted the children had lived in Cedar Rapids all of their lives and moving them three hours away would be a traumatic event for them. He noted the evidence before the court was very limited. Matthew observed the case might not be heard for some time and could have the effect of transforming the temporary order into a permanent one. Matthew also asked the court to amend its order to include a provision allocating income tax dependency exemptions. Rachael resisted the motion, advising she and the children had moved to Wisconsin. She

suggested Matthew's request for allocation of tax benefits was premature. The court denied most of Matthew's requests. He now appeals, contesting the court's order on temporary spousal and child support, as well as the court's no-call on his request for allocation of tax dependency exemptions.[1]

### II. Standard of Review.

We review dissolution proceedings de novo. *See* Iowa R. App. P. 6.907; *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). We examine the entire record and determine anew the issues properly presented. *In re Marriage of Rhinehart*, 704 N.W.2d 677, 680 (Iowa 2005). "We give weight to the findings of the district court, particularly concerning the credibility of witnesses; however, those findings are not binding upon us." *McDermott*, 827 N.W.2d at 676. That said, "we accord the trial court considerable latitude in resolving disputed claims and will disturb a ruling 'only when there has been a failure to do equity.'" *In re Marriage of Smith*, 573 N.W.2d 924, 926 (Iowa 1998) (citation omitted).

### III. Discussion.

On appeal, Matthew challenges the temporary spousal and child support he was ordered to pay Rachael, arguing the court erred in its calculations and is otherwise inequitable. He also argues he should have been awarded an income tax dependency exemption.

---

[1] While temporary custody orders are not final judgments appealable as a matter of right, orders for temporary support are final for purposes of appeal. *See In re Marriage of Denly*, 590 N.W.2d 48, 51 (Iowa 1999); *In re Marriage of Prybil*, 230 N.W.2d 487, 488 (Iowa 1975). Matthew's application for interlocutory appeal on temporary custody was denied by the supreme court on November 13, 2019, Docket No. 19-1785.

## A. *Spousal Support.*

Spousal support is "a stipend to a spouse in lieu of the other spouse's legal obligation for support." *In re Marriage of Tzortzoudakis*, 507 N.W.2d 183, 186 (Iowa Ct. App. 1993), and whether spousal support is warranted "is dependent on the facts of each case," *In re Marriage of Shanks*, 805 N.W.2d 175, 178 (Iowa Ct. App. 2011). Courts balance the ability of one spouse to pay against the needs of the other spouse. *See Tzortzoudakis*, 507 N.W.2d at 186. We measure "need" objectively by what is required for a "spouse to become self-sufficient at a standard of living reasonably comparable to that enjoyed during the marriage." *In re Marriage of Gust*, 858 N.W.2d 402, 411 (Iowa 2015). In deciding whether spousal support is equitable, we consider statutory criteria, including: (1) the length of the marriage, (2) the age and health of the parties, (3) the property distribution, (4) the parties' education levels, (5) the earning capacity of the party seeking spousal support, (5) the feasibility of the spouse seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and (6) other factors relevant in an individual case. *See* Iowa Code § 598.21A(1) (2019); *see also In re Marriage of Hansen*, 733 N.W.2d 683, 704 (Iowa 2007).

Iowa law recognizes three forms of spousal support—traditional, rehabilitative, and reimbursement—and each has a different aim. *In re Marriage of Becker*, 756 N.W.2d 822, 826 (Iowa 2008). Both parties agree the district court's spousal support award was rehabilitative. Rehabilitative spousal support is meant to support an economically-dependent spouse for a limited time to provide an

opportunity for that spouse to become self-supporting through re-education or retraining. *Id.*

In considering the appropriate factors, the district court found,

> Matt and Rachael married in 2009. They are parents of TE born in 2012 and ME born in 2016. ME is non verbal and has special needs that must be managed daily. The record does not contain Matt's age. Rachel is 30. She has been a homemaker and stay at home mother for 7 years. She does have an AA degree. She wishes to return to school and obtain a bachelor's degree in business that will allow her to support herself and the children. Rachel last worked at US Bank earning $10 per hour, roughly 10 years ago. Matthew is an engineer at Rockwell. He also works as a football referee. His gross annual earnings total $94,000. Upon the parties' agreement, Rachael has been the primary care provider for the children. Going forward, the parties must maintain two households, and Rachael must prepare herself to work outside the home. She seeks an order allowing her to relocate, with the children, to Wisconsin. She will reside with her parents, work part-time and resume her education. Her ability to reside with family, presumably rent free, will provide support to her and the children while she acquires the ability to support herself. This arrangement will also benefit the financial situation of these parties.

Matthew argues the court's award of spousal support to Rachael "is duplicative because it both permits Rachael support and permits her relocation to be supported by her family." But Rachael's affidavit does not contemplate that her family would fully support all her financial needs. She stated, "[w]ith my parent's support regarding childcare and housing, I would be able to go back to school to earn my Business degree." Matthew also asserts the court's award "inequitably inflates Rachael's expenses based on her itemization to her benefit and Matthew's detriment." The district court said nothing of Rachael's expenses. Rachael does not state in her narrative affidavit the cost to go back to school, nor is that cost reflected in her financial affidavit. While we cannot discern from the record exactly what Rachael's expenses would be after relocation to Wisconsin, her expenses for

food and clothing, transportation, children's needs, and other basics would continue.[2] Upon our de novo review of the record, and considering the relevant factors, we find no reason to disturb the court's spousal support determination. We cannot say the district court failed to do equity here. The temporary support obligation will help Rachael towards becoming self-sufficient. We affirm the district court's temporary spousal support award to Rachael of $1000 per month.

### B. Child Support.

"In Iowa, child support is calculated using the child support guidelines." *In re Marriage of Erpelding*, 917 N.W.2d 235, 245 (Iowa 2018); *see* Iowa Code § 598.21B (2018); Iowa Ct. R. 9.2. "The purpose of the guidelines is to provide for the best interests of the children by recognizing the duty of both parents to provide adequate support for their children in proportion to their respective incomes." Iowa Ct. R. 9.3(1).

"To compute the guideline amount of child support," the district court must first compute the adjusted net monthly income of each parent. Iowa Ct. R. 9.14. That amount is ascertained by first determining each parent's gross monthly income and then subtracting specified taxes and deductions. *See* Iowa Ct. R. 9.14(1). Gross monthly income is the "reasonably expected income from all sources." Iowa Ct. R. 9.5(1). "[T]he court shall not impute income" to a party "except . . . [p]ursuant to agreement of the parties, or . . . [u]pon request of a party,

---

[2] Rachael's financial affidavit shows monthly family expenses totaling $6080 while the family was living in the Cedar Rapids home. It includes the house payment, utilities, a car payment (it is unclear whether the car payment is for Rachael's car or Matthew's car), as well as other living expenses. Matthew's financial affidavit covering the same items shows $4500 in monthly family expenses.

and a written determination is made by the court under rule 9.11." Iowa Ct. R.

9.5(1)(d)(1), (2). Rule 9.11(4) permits the court to

> impute income in appropriate cases subject to the requirements of rule 9.5. If the court finds that a parent is voluntarily unemployed or underemployed without just cause, child support may be calculated based on a determination of earning capacity. A determination of earning capacity may be made by determining employment potential and probable earnings level based on work history, occupational qualifications, prevailing job opportunities, earnings levels in the community, and other relevant factors. The court shall not use earning capacity rather than actual earnings or otherwise impute income unless a *written determination is made that, if actual earnings were used, substantial injustice would occur or adjustments would be necessary to provide for the needs of the child(ren) or to do justice between the parties.*

(Emphasis added); *see also In re Marriage of McKenzie*, 709 N.W.2d 528, 533

(Iowa 2006).

"A court must determine the parent's monthly income from the most reliable

evidence presented." *In re Marriage of Powell*, 474 N.W.2d 531, 534 (Iowa 1991).

"All income that is not anomalous, uncertain, or speculative should be included

when determining a party's child support obligations." *In re Marriage of Nelson*,

570 N.W.2d 103, 105 (Iowa 1997). "[T]he burden is on the recipient of the income

to establish that it should be excluded from gross income as uncertain and

speculative." *Markey v. Carney*, 705 N.W.2d 13, 19 (Iowa 2005).

Each party submitted to the district court an affidavit of financial status and

child support worksheets. Matthew shows gross annual taxable income of $94,288

and an adjusted net monthly income of $5765. Matthew projected Rachael's

annual income to be $20,800 by "imputing full time income at $10 per hour." He

then calculated his child support obligation to be $1350 a month (assuming

Rachael had physical care of the two children and there was no award of spousal

support). Rachael stated her earned income was zero, as she was a stay-at-home mother and homemaker. She shows an adjusted net monthly income of $1500 monthly in anticipated spousal support. She shows Matthew's annual income at $99,343 (including a bonus). She calculated Matthew's child support obligation to be $1164 per month assuming she was the custodial parent. Alternatively, she calculated Matthew's child support obligation to be $1449 assuming spousal support of $1000 per month.

The district court found Matthew's gross annual earnings to be $94,000. No income was imputed to Rachael.

Matthew argues the court should have calculated Rachael's income based her earning capacity, which he determined from her past employment. Assuming without deciding that Matthew's statement he was "imputing full time income at $10 per hour" to Rachael was enough to alert the court he was asking the court to impute income to Rachael, there was nothing to evidence that "substantial injustice would occur or adjustments would be necessary to provide for the needs of the children or to do justice between the parties" if her actual income was used. Upon our de novo review, we find no reason to disturb the court's failure to impute income to Rachael.

Matthew also argues the court failed to factor in the spousal support award in calculating its child support obligation determination. We disagree. Rachael's calculations show a $1449 monthly child support obligation assuming net income to her of $1000 in monthly spousal support. But she overstates Matthew's gross

annual income by $5055.[3]  So the actual child support obligation would be lower than the $1449 she calculated.  Matthew's calculations show a $1350 monthly child support obligation assuming $1648 in imputed net monthly income to Rachael.  But he overstates Rachael's gross annual income by $8800.[4]  So the actual child support obligation would be higher than the $1350 he calculated.  It would seem that under the child support guidelines, the amount of child support should be between $1449 (Rachael's figure—too high) and $1350 (Matthew's figure—too low).  The district court awarded monthly child support in the amount of $1100, noting:  "To the extent this deviates from guideline support, the court finds that the deviation does justice and equity between the parties."  We conclude the district court considered its spousal support award in determining the child support award, and, based on the record before us, its deviation is well within its discretion.  We therefore affirm this issue.

### C. Tax Exemption.

Generally, "the parent given primary physical care of the child is entitled to claim the child as a tax exemption."  *In re Marriage of Okland*, 699 N.W.2d 260, 269 (Iowa 2005).  "However, courts have the authority to award tax exemptions to the noncustodial parent 'to achieve an equitable resolution of the economic issues presented.'"  *Id.* (*quoting In re Marriage of Rolek*, 555 N.W.2d 675, 679 (Iowa 1996)).  It appears from the record before us that Matthew made no argument in support of his request to the district court.  No rationale was advanced for designating tax dependency exemptions at that point.  No song was sung to the

---

[3] $99,343 (with bonus) - $94,288 (without bonus) = $5055.
[4] $20,800 (imputed) - $12,000 (spousal support awarded) = $8800.

district court. Rachael argued it was premature to award tax credits to Matthew at that time as the parties were still married. Under such circumstances, we find no error in the court's declination to make the requested allocation. In any event, the district court cannot be criticized in not granting the request absent reason for the request.

### D. Appellate Attorney Fees.

Finally, Rachael requests an award of appellate attorney fees. "An award of attorney fees is not a matter of right; rather, it rests within the discretion of the court." *In re Marriage of Spiegel*, 553 N.W.2d 309, 320 (Iowa 1996), *superseded by statute on other grounds as recognized by In re Marriage of Shanks*, 758 N.W.2d 506, 512 (Iowa 2008). We consider "the financial positions of the parties and whether the party making the request needed to defend the trial court's decision on appeal. *Id.* Upon our review and considering the relevant facts, we decline to award Rachael appellate attorney fees.

### IV. Conclusion.

Upon our de novo review of the record, we affirm the district court's temporary order in all respects. Any costs on appeal are assessed to Matthew.

**AFFIRMED.**